IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JAY LUCAS, §
§
 Plaintiff, §
§
v. § Civil Action No. 3:13-CV-1057-G
§
OCWEN HOME LOAN SERVICING, et al., §
§
 Defendants. §

<u>FINDINGS, CONCLUSIONS, AND RECOMMENDATION</u>

Pursuant to Special Order No. 3-251, this case was automatically referred for pretrial management. Before the Court are *Plaintiff's First Amended Motion to Remand*, filed April 12, 2013 (doc. 11), and *Defendant Ocwen Loan Servicing, LLC's Motion for Partial Dismissal Pursuant to Federal Rule of Civil Procedure 12(b)(6)*, filed March 19, 2013 (doc. 5). Based on the relevant filings and applicable law, the plaintiff's motion to remand should be **DENIED,** and the defendant's motion to dismiss should be **GRANTED.**

## I. BACKGROUND

This case involves foreclosure of real property located at 2575 Gibbs Williams Road, Dallas, Texas 75233 (the Property). (doc. 1-1 at 6.)[1] On February 28, 2013, Jay Lucas (Plaintiff) filed this *pro se* suit against Federal National Mortgage Association (Fannie Mae), Mortgage Electronic Registration Systems (MERS), Saxon Mortgage (Saxon), Reconstruct, and Ocwen Loan Servicing, LLC (Ocwen)[2] (collectively, Defendants) in the Dallas County Court at Law No. 1. (*Id.* at 5.)

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

[2] Plaintiff incorrectly named Ocwen as "Ocwen Home Loan Servicing" in his state petition. (doc. 1-1 at 2.)

Plaintiff claims to be the Property's "rightful owner" and maintained possession of it as of the date he filed suit.  (*Id.* at 8.)  He concededly fell "behind on [his] payments in 2012" and contacted Ocwen, the mortgage servicer, for a loan modification.  (*Id.*)  Ocwen allegedly "assured" him that his application would be approved.  (*Id.*)  Ocwen initiated foreclosure proceedings while his application was pending and allegedly failed to give him proper notice of the foreclosure sale.  (*Id.* at 8–9.)  It also purportedly agreed to sell the Property via "a short sale," but the transaction fell through after it "failed to respond to [Plaintiff's] numerous attempts to close" on the sale.  (*Id.* at 9.)

Plaintiff also claims that Ocwen fraudulently withheld $33,000 in insurance proceeds for repairs to the Property after it was damaged by fire in late 2012, and refused to release the funds or apply them to the balance due on the mortgage.  (*Id.*)  Ocwen allegedly demanded "nearly $70,000 in cash" from him in addition to the $33,000 insurance proceeds to stop the foreclosure.  (*Id.*)  He complains that "Defendants"[3] "acted with malice to deprive [him]" of the Property and committed a "material breach" by failing to provide him with a valid acceleration notice, "a proper demand" of the balance due, and the requisite foreclosure notices.[4]  (*Id.* at 9–10.)  "As a result of their wanton disregard [of] the requirement of good faith and fair dealing," Defendants waived their rights to accelerate the note and foreclose on the Property.  (*Id.* at 14.)

Plaintiff expressly lists claims for breach of contract, violations of the Texas Debt Collection Practices Act (TDCPA), and the common law tort of unreasonable collection efforts.  (*Id.* at 11–15.)

---

[3] It is unclear from the complaint against which Defendant(s) Plaintiff asserts each claim.  For example, while he expressly lists all five Defendants in the title of his breach of contract claim, in the body of that section, he refers to "Defendants Ocwen and Ocwen Mortgage." (*See* doc. 1-1 at 11.)  The allegations with respect to all of the other claims refer simply to "Defendants."  (*See id.* at 10–15.)

[4] Elsewhere in the complaint, Plaintiff essentially acknowledges that Ocwen mailed the requisite notices, but contends that it sent them to the wrong recipient.  (*See* doc. 1-1 at 9) ("[A]ll notices ha[ve] been directed to J.W. Lucas in Little Rock, Arkansas who has no interest in the property").

Liberally construed, the complaint also asserts claims for fraud, wrongful foreclosure, violations of the Texas Constitution, and suit to quiet title. (*Id.* at 10–11, 14.) He seeks actual, economic, and exemplary damages, attorney's fees, declaratory judgment, and injunctive relief to restrain Defendants from foreclosing and selling the Property. (*Id.* at 13–17.)

On March 1, 2013, the state court issued a temporary restraining order (TRO) to restrain Ocwen from executing the foreclosure sale. (*Id.* at 43–44.) On March 12, 2013, Ocwen removed the action to federal court asserting diversity jurisdiction under 28 U.S.C. § 1332. (doc. 1 at 3.) Ocwen moved to dismiss Plaintiff's complaint a few days later. (doc. 5.) Plaintiff moved to remand the case to the state court pursuant to 28 U.S.C. § 1447(c) on April 12, 2013, for lack of subject-matter jurisdiction. (doc. 11.) The motions are now ripe for recommendation.

## II.  MOTION TO REMAND

### A.   <u>Jurisdiction</u>

Any civil action brought in state court may be removed to federal court if the district court has original jurisdiction over that action. 28 U.S.C. § 1441(a). A district court's original jurisdiction is of two types: federal question jurisdiction and diversity jurisdiction. 28 U.S.C. §§ 1331, 1332. Federal question jurisdiction exists in all civil actions arising under the Constitution, laws, or treaties of the United States. *Id.* § 1331. Diversity jurisdiction exists in all civil actions where the amount in controversy exceeds $75,000.00, exclusive of interests and costs, and there is diversity of citizenship between the parties. *Id.* § 1332(a).

To determine whether it has federal jurisdiction over the removed case, the court must "consider the claims in the state court petition as they existed at the time of removal." *Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citing *Cavallini v. State*

*Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995)).  "The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper."  *Id.*  "[A]ny doubt about the propriety of removal,  must be resolved in favor of remand."  *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007).

"[W]hen a court performs its duty to verify that it has jurisdiction, it may be required to survey the entire record, including the defendant's pleadings, and base its ruling on the complaint, on undisputed facts, and on its resolution of disputed facts."  *Aquafaith Shipping, Ltd. v. Jarillas*, 963 F.2d 806, 808 (5th Cir. 1992) (citation omitted); *see also Smith v. Estate of Wagner*, No. CIV A H 06-02629, 2006 WL 2729282, at *3 (S.D. Tex. Sept. 25, 2006) (explaining that a "court ... [may] consider the defendant's notice of removal, other pleadings, and the record as of the time of removal if necessary to shed light on the plaintiff's pleadings").  "The purpose of this careful survey, however, is to shed light on the plaintiff's pleadings.  The court's focus is on the plaintiff's pleadings, not the defendant's."  *Aquafaith*, 963 F.2d at 808.

## 1.    *Diversity of Citizenship*

Because no federal question is presented in this case, removal was proper only if Ocwen has met its burden of showing that there is diversity of citizenship between the parties.  *See Cantor v. Wachovia Mortg., FSB*, 641 F. Supp. 2d 602, 605 (N.D. Tex. 2009); *see also Merryman v. JPMorgan Chase & Co.*, No. 3:12-CV-2156-M BH, 2012 WL 5409735, at *2 (N.D. Tex. Oct. 12, 2012), *rec. adopted*, 2012 WL 5409749 (N.D. Tex. Nov. 5, 2012).

An action removable based on diversity jurisdiction may not be removed if "any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b).  A case that is removed under § 1332 must have "complete

diversity" of citizenship. *Lincoln Property Co. v. Roche*, 546 U.S. 81, 84 (2005); *see also* 28 U.S.C. § 1332. This means that a plaintiff may not share citizenship with any defendant. *Whalen v. Carter*, 954 F.2d 1087, 1094 (5th Cir. 1992). The party asserting diversity jurisdiction must "distinctly and affirmatively" allege the citizenship of all the parties. *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir. 1988); *McGovern v. Am. Airlines, Inc.*, 511 F.2d 653, 654 (5th Cir. 1975) (per curiam) (citations omitted).

Here, it is undisputed that Plaintiff is a Texas resident. (*See* docs. 1 at 4–5; 1-1 at 6; 15 at 2.) Ocwen asserts that it is a Florida resident because its "sole member," Ocwen Financial Corporation, is "a Florida corporation." (doc. 15 at 2.) The Fifth Circuit has held that, "like limited partnerships and other unincorporated associations or entities, the citizenship of a [limited liability company] is determined by the citizenship of all of its members." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). The Florida Department of State lists "Ocwen Financial Corporation" as an "active" Florida corporation.[5] Ocwen has shown that it is a Florida resident.

Nevertheless, Ocwen has failed to "distinctly and affirmatively" allege the citizenship of the other Defendants. (*See* doc. 15.) This failure is sufficient to warrant remand. *See McGovern*, 511 F.2d at 654 (affirming dismissal of a complaint for lack of subject-matter jurisdiction where the plaintiff made "deficient allegations of diversity"); *see also Gasch*, 491 F.3d at 281–82 (doubts about the propriety of removal must be resolved in favor of remand).

### 2. *Improper Joinder Exception*

Ocwen opposes remand, arguing that the citizenship of Fannie Mae, MERS, Saxon

---

[5] *See* http://search.sunbiz.org/Inquiry/CorporationSearch/SearchResults/EntityName/Ocwen/Page1 (last visited October 9, 2013).

Mortgage, and Reconstruct (whatever it may be) should be disregarded in determining diversity of citizenship because these Defendants were improperly joined, as shown by Plaintiff's "fail[ure] to state any claim against them."  (doc. 15 at 2 and n. 7.)  Ocwen contends that because "Plaintiff has not plead any facts regarding any named defendant other than Ocwen," there is no reasonable basis to predict that he can recover against any Defendant but Ocwen.  (*Id.*)

The improper joinder doctrine is a narrow exception to the complete diversity rule.  *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011).  The doctrine ensures "that the presence of an improperly joined, non-diverse defendant does not defeat federal removal jurisdiction premised on diversity."  *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 171 (5th Cir. 2009) (citation omitted).  It allows a court to disregard the citizenship of an improperly joined defendant in determining diversity.  *See Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004) (en banc).  To show improper joinder, the removing defendant bears the heavy burden of showing either: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court."  *Id.* at 573–74 (citing *Travis v. Irby*, 326 F.3d 644, 646–47 (5th Cir. 2003)).

Where, as here, the parties' citizenship is undisputed, "the inquiry [] focuses on the plaintiff's inability to establish a cause of action against the non-diverse party in state court."  *Adams v. Chase Bank*, No. 3:11-CV-3085-M, 2012 WL 2122175, at *2 (N.D. Tex. May 11, 2012), *rec. adopted,* 2012 WL 2130907 (N.D. Tex. June 12, 2012).  To prove improper joinder based on the plaintiff's inability to establish a cause of action against a non-diverse defendant, the removing defendant must show there is no possibility of recovery by the plaintiff against the in-state defendant, i.e., no reasonable basis for predicting that the plaintiff might be able to recover against the in-state

defendant. *Smallwood*, 385 F.3d at 572. "If no reasonable basis for recovery exists, a conclusion can be drawn that the plaintiff's decision to join the local defendant was indeed improper, unless the showing compels dismissal of all defendants." *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005) (emphasis omitted).

There are two proper means for predicting whether a plaintiff has a reasonable basis for recovery under state law. *Smallwood*, 385 F.3d at 573. Initially, a "court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Id.* (citation omitted). The Court must take as true the plaintiff's well-pleaded allegations of fact and resolve any contested issues of fact or ambiguities in state law in the plaintiff's favor. *Cantor*, 641 F. Supp. at 608 (citations omitted). The court does not predict "whether the plaintiff will certainly or even probably prevail on the merits, but look[s] only for a possibility that he may do so." *Dodson v. Spiliada Mar. Corp.*, 951 F.2d 40, 42 (5th Cir. 1992) (citation omitted). "Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Smallwood*, 385 F.3d at 573. If "a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder . . . the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.* Although a matter for the court's discretion, "a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude [the] plaintiff's recovery against the in-state defendant." *Id.* at 573–74. The court may not move "beyond jurisdiction and into a resolution of the merits." *Id.* at 574.

Here, Plaintiff expressly lists claims for breach of contract, violations of the TDCPA, and unreasonable collection efforts. (doc. 1-1 at 11–15.) His complaint also appears to assert claims for

fraud, wrongful foreclosure, violations of the Texas Constitution, and suit to quiet title.  (*Id.* at

10–11, 14. ) Notably, despite Plaintiff's allegations directed at unspecified "Defendants," all of the

asserted facts giving rise to his claims implicate only Ocwen, the mortgage servicer.  Specifically,

he claims that Ocwen: (1) initiated the foreclosure proceedings despite having made representations

that it would approve his loan modification application and conduct a short sale, (2) improperly

withheld $33,000 in insurance proceeds destined for repairs to the Property instead of releasing the

funds or applying them to the balance due on the mortgage, (3) failed to close on the short sale even

though Plaintiff complied with all of the prerequisites and found a willing buyer, and (4) failed to

provide Plaintiff with the requisite foreclosure notices.  (*See id.* at 8–10.)  As explained more fully

below with respect to Ocwen's motion to dismiss, under a Rule 12(b)(6)-type analysis, Ocwen has

met its heavy burden to show there is no reasonable basis for predicting Plaintiff might recover

against Fannie Mae, MERS, Saxon, or Reconstruct on any of his claims.  The joinder of these

Defendants was therefore improper and their citizenship does not defeat removal jurisdiction

premised on diversity of citizenship.[6]  *See Smallwood*, 385 F.3d at 572–73.  Accordingly, Ocwen has

met its burden to show complete diversity of citizenship exists in this case.

### 3.    *Amount-in-Controversy*

Plaintiff contends that remand is warranted because the amount-in-controversy requirement

of diversity jurisdiction is not met.  (doc. 11 at 6.)  Ocwen responds that the requirement is satisfied

because it is facially apparent from Plaintiff's petition that the amount in controversy is "over

$94,000," which consists of $33,000 in claimed damages and the $61,090 current market value of

---

[6] As of the date of this Recommendation, Fannie Mae, MERS, Saxon, and Reconstruct had not been served or appeared in the case.  They are nonetheless subject to dismissal from the suit because they were improperly joined as defendants. *See Adams*, 2012 WL 2122175, at *2 (dismissing improperly joined defendant); *see also Kling Realty Co. v. Chevron USA, Inc.*, 575 F.3d 510 (5th Cir. 2009) (affirming dismissal of improperly joined defendant).

the Property.  (doc. 15 at 3–4.)

The amount-in-controversy threshold is a necessary element that must be met before a federal court properly exercises diversity jurisdiction.  *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). In motions to remand, the amount in controversy is determined from the plaintiff's perspective.  *Burr v. JP Morgan Chase Bank*, *N.A.*, No. 4:11-CV-03519, 2012 WL 1016121, at *2 (S.D. Tex. Mar. 23, 2012).  The defendant, as the removing party, bears the burden of establishing by a preponderance of the evidence that the amount in controversy exceeds $75,000.00.  *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993).  The defendant may satisfy this burden by demonstrating that it is facially apparent from the plaintiff's petition that the claim likely exceeds $75,000.00, or by setting forth the facts in controversy that support a finding of the requisite amount.  *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).

   a.  <u>The Property's Value</u>

In actions where the plaintiff seeks injunctive relief, "it is well established that the amount in controversy is measured by the value of the object of the litigation."  *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977).  The "object of the litigation" is "the value of the right to be protected or the extent of the injury to be prevented."  *McDonald v. Deutsche Bank Nat. Trust Co.*, No. 3:11-CV-2691-B, 2011 WL 6396628, at *2 (N.D. Tex. Dec. 20, 2011) (citing *Hartford Ins. Group v. Lou-Con Inc.*, 293 F.3d 908, 910 (5th Cir. 2002)).  If the injury sought to be prevented is the loss of title to property, then the property itself becomes the object of the litigation. *Burr*, 2012 WL 1016121, at *3.  Accordingly, where the plaintiff puts the title to property in dispute, the value of the property is the proper measure of the amount in controversy. *Id.*; *accord McDonald*, 2011 WL 6396628, at *2 ("When 'a right to property is called into question in its entirety, the value

-9-

of the property controls the amount in controversy.'") (citing *Waller v. Prof'l Ins. Corp.*, 296 F.2d

545, 547–48 (5th Cir. 1961)).

Here, Plaintiff makes allegations that put the title to the Property in dispute.  He claims, for

example, to be the Property's "rightful owner."  (doc. 1-1at 8.)  He seeks a declaration that Ocwen

waived its right to accelerate the note and is estopped from foreclosing on the Property.  (*Id.* at 14.)

He requests damages for his "loss of title" to the Property and seeks to recover title.  (*Id.*)  Because

the complaint calls into question the right to the Property in its entirety, the Property's value may be

considered in determining the amount in controversy.  *See McDonald*, 2011 WL 6396628, at *2.

To prove the Property's value, Ocwen attached to its removal notice an appraisal report by

the Dallas County Appraisal District (DCAD).  (doc. 1-1 at 75.)  The report shows the current

appraised value of the Property is $61,090.[7]  (*Id.*)

b.    Claimed Damages

"Courts [] consider the nature of the claims and the types of damages sought to determine

whether it is facially apparent that the amount in controversy meets jurisdictional requirements."

*Hannah v. Allstate Texas Lloyd's*, No. EP-11-CV-269-KC, 2011 WL 5325257, at *2 (W.D. Tex.

Nov. 2, 2011) (citation and internal quotation marks omitted).  Here, Plaintiff seeks $33,000 in actual

damages in relation to his fraud claim and an unspecified amount of exemplary damages, attorney's

fees, and other damages generally.  (doc. 1-1 at 9, 11, 13–14.)

The total amount in controversy, consisting of the Property's appraised market value of

$61,090 and $33,000 in claimed damages, totals over $94,000 and satisfies the jurisdictional amount.

---

[7]  Plaintiff does not object to the admissibility of the report, and attached a copy of the report to his motion to remand.  (*See* doc. 11 at 16–17.)

Because Ocwen has shown that the other Defendants were improperly joined and that the amount in controversy exceeds $75,000, it has met its burden to show that the Court has subject matter jurisdiction based on diversity of citizenship.  The motion to remand on this basis should be denied.

**B.**     **Abstention**

In his motion to remand, Plaintiff also argues that the Court should abstain from deciding his case based on the doctrines of *Younger*, *Colorado River*, and *Burford*.  (doc. 11 at 2–5.)

"Abstention is the doctrine under which a federal district court may decline to exercise or postpone the exercise of its jurisdiction."  *Emke v. Compana LLC*, No. CIV A 306CV1416-O BH, 2009 WL 1838976, at *3 (N.D. Tex. June 22, 2009) (citing *Colo. River Water Conservation Dist. v. United States*,  424 U.S. 800, 813 (1976)).  Because "[f]ederal courts have a 'virtually unflagging obligation' to exercise their jurisdiction," however, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule."  *Id.* (citation omitted); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15 (1983).  "[T]he decision whether or not to abstain is generally one involving some exercise of discretion by the district court."  *Am. Bank & Trust Co. of Opelousas v. Dent*, 982 F.2d 917, 922 (5th Cir. 1993); *see also Sierra Club, Inc. v. Sandy Creek Energy Associates, L.P.*, 627 F.3d 134, 144 (5th Cir. 2010) ("This Court generally reviews abstention decisions under an abuse of discretion standard.") (citation and internal quotation marks omitted).

*1.*     ***Younger* Abstention**

Plaintiff contends that abstention is warranted under *Younger* because his "complaint raises no federal claims."  (doc. 11 at 5.)

The *Younger* abstention doctrine generally "precludes federal courts from granting injunctive relief based on constitutional challenges to state criminal prosecutions pending at the time the federal

action is instituted." *Wightman-Cervantes v. Texas*, No. 3-03-CV-3025-D, 2004 WL 2512208, at

*2 (N.D. Tex. Nov. 5, 2004) (citing *Younger v. Harris*, 401 U.S. 37, 54 (1971)).  Nevertheless,

"[w]hile it was once thought that *Younger* applied only to state criminal or 'quasi-criminal'

proceedings, the [Supreme] Court has now made it clear that '[t]he policies underlying *Younger* are

fully applicable to noncriminal judicial proceedings when important state interests are involved.'"

*Women's Cmty. Health Ctr. of Beaumont, Inc. v. Texas Health Facilities Comm'n*, 685 F.2d 974,

978–79 (5th Cir. 1982) (quoting *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S.

423 432 (1982)).  Three conditions must be met for *Younger* abstention to apply: "(1) the dispute

must involve an 'ongoing state judicial proceeding;' (2) an important state interest in the subject

matter of the proceeding must be implicated;[8] and (3) the state proceeding must afford an adequate

opportunity to raise constitutional challenges." *Wightman-Cervantes*, 2004 WL 2512208, at *2

(citing *Wightman v. Texas Supreme Court*, 84 F.3d 188, 189 (5th Cir. 1996)).

Here, Plaintiff raises no constitutional challenge, and he fails to identify an important state

interest that may be implicated by any of his claims.  (*See* doc. 11 at 4–5.)

### 2.    *Colorado River* Abstention

Plaintiff also argues, in essence, that the Court should abstain under the *Colorado River*

doctrine because "numerous similar cases" to this case are currently "pending in state court."  (doc.

11 at 2.)  He attached to his motion to remand a list of foreclosure cases that he claims are pending

in state court and have not been removed to federal court.  (*See id.* at 9.)

The *Colorado River* doctrine requires courts to "giv[e] regard to conservation of judicial

---

[8] Important state interests may be at stake, for example, in cases involving judgment "enforcement actions" by a state against an individual or "situations uniquely in furtherance of the fundamental workings of a state's judicial system," such as civil contempt proceedings.  *See Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 69–70 (1st Cir. 2005) (citations omitted).

resources and comprehensive disposition of litigation" by abstaining from a case where "a similar

action is pending in state court." *Lemery v. Ford Motor Co.*, 205 F. Supp. 2d 710, 713–15 (S.D.

Tex. 2002) (citing *Colorado River*, 424 U.S. at 817). "Courts evaluating a request for *Colorado*

*River* abstention must be satisfied that (1) there is a parallel proceeding pending in state court and

(2) 'exceptional circumstances'[9] warrant abstention." *Bates v. Laminack*, No. 2:12-CV-00387, 2013

WL 1345193, at *11 (S.D. Tex. Apr. 1, 2013) (citations omitted). Parallel proceedings are actions

"involving the same parties and the same issues." *RepublicBank Dallas, N.A. v. McIntosh*, 828 F.2d

1120, 1121 (5th Cir. 1987) (per curiam) (citations omitted). The Fifth Circuit has emphasized that

even when there are parallel proceedings pending in a state and federal court, "only the clearest of

justifications will warrant [abstention]." *Id.* (citing *Colorado River*, 424 U.S. at 819 and *Moses*, 460

U.S. at 28).

There are no pending parallel proceedings between the parties in a state and federal court,

given that Ocwen removed all of Plaintiff's claims to federal court.[10] (*See* doc. 1.) Plaintiff's motion

to abstain premised on the *Colorado River* doctrine should be denied on this basis alone. *See Bates*,

2013 WL 1345193, at *11 (denying the plaintiff's motion to abstain; explaining in part that

"[w]ithout a pending parallel proceeding" between the parties, "the first requirement for *Colorado*

*River* abstention [was] absent"). In addition, Plaintiff fails to identify any factors justifying

abstention under the "exceptional circumstances" prong. *See Wilton*, 515 U.S. at 285–86;

---

[9] The Supreme Court has identified six factors to consider in determining whether exceptional circumstances justify *Colorado River* abstention: (1) the assumption by either court of jurisdiction over a *res*, (2) the relative inconvenience of the forums, (3) the avoidance of piecemeal litigation, (4) the order in which jurisdiction was obtained by the concurrent forums, (5) whether and to what extent federal law provides the rules of decision on the merits, and (6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 285–86 (1995)).

[10] Notably, Plaintiff does not assert that any of the "similar cases" allegedly pending in state court involve the same parties and the same issues as those involved in this case. (*See* doc. 11 at 9.)

*RepublicBank*, 828 F.2d at 1121.  Accordingly, his motion to abstain based on the *Colorado River* doctrine should also be denied.

### 3.   *Burford* Abstention

Lastly, Plaintiff argues that *Burford* abstention is proper because there "are numerous cases similar to the case at bar [pending] against Ocwen" in state court.  (doc. 11 at 4.)

*Burford* abstention is appropriate under only two circumstances: (1) "when a case involves 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the particular case at bar'"; and (2) "when the exercise of federal jurisdiction over the question in the case would disrupt state efforts to establish a coherent policy with respect to a matter of substantial public concern."  *Klein v. Fed. Ins. Co.*, No. 7:03-CV-102-D, 2012 WL 2886679, at *3 (N.D. Tex. July 16, 2012) (Fitzwater, C.J.) (citing *Barnhardt Marine Ins., Inc. v. New England Int'l Sur. of Am., Inc.*, 961 F.2d 529, 531 (5th Cir. 1992).  The Fifth Circuit has identified five relevant factors in determining whether *Burford* abstention is appropriate:  (1) whether the claim arises under federal or state law; (2) whether the case requires inquiry into unsettled issues of state law or into local facts; (3) the importance of the state interest involved; (4) the state's need for a coherent policy in that area; and (5) the presence of a special state forum for judicial review."  *Moore v. State Farm Fire and Cas. Co.*, 556 F.3d 264, 272 (5th Cir. 2009) (citation omitted).

Here, although all of Plaintiff's claims arise under state law, i.e., breach of contract, fraud, violations of the TDCPA, etc., the claims do not involve a novel or difficult question of state law.  (*See* doc. 1-1 at 5–19.)  Courts in this district routinely decide foreclosure cases involving claims such as Plaintiff's.  *See, e.g.*, *Henderson v. Wells Fargo Bank, N.A.*, No. 3:12-CV-3935-L, 2013 WL 5433498, at *1 (N.D. Tex. Sept. 30, 2013) (the plaintiff asserted state law claims for breach of

contract, negligence, fraud, negligent misrepresentation, and violations of the TDCPA arising from

the lender's foreclosure of his home); *Holloway v. Wells Fargo Bank, N.A.*, No. 3:12-CV-2184-G

BH, 2013 WL 1187156, at *3 (N.D. Tex. Feb. 26, 2013), *rec. adopted*, 2013 WL 1189215 (N.D.

Tex. Mar. 22, 2013) (the plaintiff asserted similar claims arising from similar facts as in *Henderson*).

Lastly, Plaintiff fails to identify any important state interest at stake for which "a coherent policy"

is necessary.  Because Plaintiff points to no exceptional factors justifying abstention, his motion to

abstain on this basis should also be denied.

In conclusion, Plaintiff's motion to remand based on lack of subject matter jurisdiction or

abstention based on the doctrines of *Younger*, *Colorado River*, and *Burford* should be denied.

## III.  MOTION TO DISMISS

Ocwen moves to dismiss Plaintiff's claims for breach of contract, violations of the TDCPA,

unreasonable collections efforts, fraud, and wrongful foreclosure under Fed. R. Civ. P. 12(b)(6) for

failure to state a claim upon which relief can be granted.  (docs. 5 at 1–2; 6 at 1–2.)

**A.**      **Rule 12(b)(6) Standard**

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be

granted. Fed. R. Civ. P. 12(b)(6).  Motions to dismiss under Rule 12(b)(6) are disfavored and rarely

granted.  *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981).  Under the 12(b)(6) standard, a court

cannot look beyond the face of the pleadings.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see*

*also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).  It

is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings

drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981).  Nonetheless, regardless

of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show

specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quotation marks omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion. *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196. When a party presents "matters outside the pleadings" with a Rule 12(b)(6) motion to dismiss, the Court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*,

847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007). "If . . . matters outside the pleading[s] are presented to and not excluded by the court," however, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). "Pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Similarly, documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]." *Collins*, 224 F.3d at 499 (quotations omitted); *accord Benchmark Elecs.*, 343 F.3d at 725. Accordingly, attachments falling under these categories may be properly considered without converting the motion to dismiss into a motion for summary judgment.

Here, Ocwen has attached to its motion to dismiss copies of what it claims are the notice of default it mailed Plaintiff on July 4, 2012, to the Property's address, and the notices of acceleration and foreclosure sale counsel mailed Plaintiff on January 31, 2013, to the Property's address, as well as to mailing addresses in Richardson, Texas and Little Rock, Arkansas.  (*See* doc. 7-1 at 5–35.) These notices are referenced in Plaintiff's complaint and are central to his general theory of the case; they are therefore considered part of the pleadings.[11]  *See Collins*, 224 F.3d at 498.

**B.**     **Breach of Contract Claims**

   ***1.***     ***Failure to Provide Foreclosure Notices***

Ocwen moves to dismiss Plaintiff's breach of contract claim, "to the extent [it] [is] based on

---

[11]  Plaintiff claims Ocwen never "supplied" him with these notices and complains that it mailed the notices to a person named "J.W. Lucas" located in Little Rock, Arkansas "who has no interest in the Property."  (doc. 1-1 at 9–10.)

the alleged failure of Ocwen to provide the proper notices of foreclosure," arguing that Plaintiff fails

to state a plausible claim in light of the notices it sent him.  (doc. 6 at 4–5.)[12]

The essential elements of a breach of contract claim in Texas are:  "(1) the existence of a

valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract

by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Hurd v. BAC*

*Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 759 (N.D. Tex. 2012) (citing *Mullins v.*

*TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009)).

Here, Plaintiff lists a claim for "material breach" by Ocwen in initiating the foreclosure

proceedings without providing him with "a proper demand" or "a statement of balance due" (i.e.,

a default notice), or with notices of acceleration and foreclosure.  (doc. 1-1 at 10–11.)  He fails to

identify, however, the existence of a valid contract between him and Ocwen requiring it to provide

him with these notices.  (*See id.*)  Moreover, in light of the default notice Ocwen sent him in July

2012, and the acceleration and foreclosure sale notices sent by counsel in January 2013, Plaintiff's

allegations fail to raise a reasonable inference that Ocwen breached any contract by failing to provide

him with these notices.  (*See* doc. 7-1 at 5–38.)  Any breach of contract claim on this basis should

be dismissed.

## 2.     *Breach of the Promises to Modify the Mortgage and Execute a Short Sale*

Ocwen construes the complaint as asserting a breach of contract claim based on its alleged

failure to perform its oral representations to modify the mortgage and execute a short sale.  (doc. 6

---

[12]  Ocwen initially moves to dismiss Plaintiff's complaint on grounds that he lacks standing to challenge the assignment of the note and deed of trust, and that Ocwen was not required to publically record any such assignment before foreclosing on the Property.  (*See* doc. 6 at 5–6.)  These arguments are not considered because Plaintiff does not challenge (or even mention) any assignment of the note or deed of trust.  (*See* doc. 1-1 at 5–19.)  Although Plaintiff disputes Ocwen's standing to foreclose, he essentially argues that Ocwen "waived" its right to foreclose by misleading him into believing that it would modify the mortgage and conduct a short sale but instead accelerating the note and foreclosing on the Property.  (*See id.* at 14.)

at 7.)  It moves to dismiss the claim as barred by the statute of frauds because those alleged promises were never reduced to writing.  (*Id.* at 7–8.)

In Texas, an agreement to modify an existing loan must comply with the statute of frauds. *Enis v. Bank of Am., N.A.*, No. 3:12-CV-0295-D, 2012 WL 4741073, at *3 (N.D. Tex. Oct. 3, 2012) (Fitzwater, C.J.); *Wiley v. U.S. Bank, N.A.*, No. 3:11-CV-1241-B, 2012 WL 1945614, at *6 (N.D. Tex. May 30, 2012).  The Texas statute of frauds provides that a loan agreement that exceeds $50,000 in value is not enforceable unless it "is in writing and signed by the party to be bound or by that party's authorized representative."  Tex. Bus. & Com. Code Ann. § 26.02(b) (West 2011). Section 26.02(b) "makes unenforceable oral modifications to [such] a loan agreement . . . unless they fall within an exception to the statute of frauds[13] or do not 'materially alter the obligations imposed by the original contract.'"  *Kiper v. BAC Home Loans Servicing, LP*, 884 F. Supp. 2d 561, 571 (S.D. Tex. 2012) (citation omitted).  Agreements to modify the lending terms, such as the interest rate, the amounts of installments, the security rights, and the remaining balance of the loan, have been found to be material modifications that must be in writing.  *See, e.g.*, *Horner v. Bourland*, 724 F.2d 1142, 1148 (5th Cir. 1984); *see also Edward Scharf Associates, Inc. v. Skiba*, 538 S.W.2d 501, 502 (Tex. Civ. App.—Waco, 1976, no writ.).

Here, Plaintiff states that he fell behind on his mortgage payments in 2012 and requested a loan modification from Ocwen, the mortgage servicer.  (doc. 1-1 at 8.)  Ocwen allegedly assured him it would approve his application but scheduled the Property for foreclosure while his application remained pending and failed to give him any notice of the foreclosure.  (*Id.* at 8–9.)  According to

---

[13] For example, "partial performance" and "promissory estoppel" are two exceptions to the statute of frauds. *See Singha v. BAC Home Loans Servicing*, LP, No. 4:10-CV-692, 2012 WL 3904345, at *5–6 (E.D. Tex. Aug. 7, 2012), *rec. adopted*, 2012 WL 3904063 (E.D. Tex. Sept. 7, 2012).

Plaintiff, Ocwen also agreed to execute a short sale and thereby release his obligations under the mortgage contract. (*Id.* at 9.) The sale allegedly fell through after Ocwen failed to complete the closing. (*Id.*) Notably, Plaintiff asserts no facts showing either that his mortgage (or the amount to be modified) was less than $50,000,[14] or that Ocwen's alleged promises were at some point reduced to writing. (*See id.*) He also fails to allege or assert any facts indicating that an exception to the statute of frauds applies here. Accordingly, any claim for breach of the promises to modify the mortgage and execute a short sale should be dismissed for failure to state a claim. *See Hurd*, 880 F. Supp. 2d at 759 (dismissing the plaintiff's "claim for breach of a promise to modify" where the promise was barred by the statute of frauds and no exception applied); *see also Milton v. U.S. Bank Nat. Ass'n*, 508 F. App'x 326, 328–29 (5th Cir. 2013) (holding that the "plaintiff' breach of contract claim [was] barred by the statute of frauds" "because there was no written agreement to delay [the] foreclosure" while her application for a loan modification was reviewed).

## C.   Collections Claims

### 1.   TDCPA[15]

Ocwen also seeks dismissal of Plaintiff's claims under the TDCPA. (doc. 6 at 9.) It contends that the claims fail because Plaintiff does not assert any facts raising a reasonable inference that Ocwen was a debt collector as defined by the Act, and because Plaintiff "generally recites the elements" of TDCPA violations "but offers no specific factual allegations in support." (*Id.*)

"The TDCPA prohibits debt collectors from using various forms of threatening, coercive,

---

[14]   The DCAD report shows the Property's market value was $61,090 in 2012. (*See* doc. 1-1 at 75.) Plaintiff does not explain what portion of this amount was mortgaged in favor of Ocwen (or the respective mortgagee). (*See* doc. 1-1 at 5–19.)

[15]   Although Plaintiff refers to the "Texas Consumer Credit Code" in the title of this claim, the substance of the claim implicates only the TDCPA. (*See* doc. 1-1 at 11–12.)

harassing or abusive conduct to collect debts from consumers." *Merryman*, 2012 WL 5409735, at

*4. The Act defines a "debt collector," in relevant part, as "a person who directly or indirectly

engages in debt collection." Tex. Fin. Code Ann. § 392.001(6) (West 2006). "Debt collection" is

defined as "an action, conduct, or practice in collecting, or in soliciting for collection, consumer

debts that are due or alleged to be due a creditor." *Id.* § 392.001(5). Courts in this district have held

that debt collection can include "actions taken in foreclosing real property." *See Sanghera v. Wells*

*Fargo Bank*, *N.A.*, No. 3:10-CV-2414-B, 2012 WL 555155, at *7 (N.D. Tex. Feb. 21, 2012) (citation

omitted); *Swim v. Bank of Am.*, No. 3:11-CV-1240-M, 2012 WL 170758, at * 5 (N.D. Tex. Jan. 20,

2012). Ocwen's attempted foreclosure may therefore fall within the purview of the TDCPA. *See*

*Sanghera*, 2012 WL 555155, at *7.[16]

        a.       Subsection392.304(a)(2)[17]

During debt collection, or in obtaining information concerning a consumer, § 392.304(a)

prohibits a debt collector from using "a fraudulent, deceptive, or misleading representation that

employs [certain prohibited] practices." Tex. Fin. Code Ann. § 392.304(a) (West 2004). Subsection

392.304(a)(2) prohibits the practice of "failing to maintain a list of all business or professional names

known to be used or formerly used by persons collecting consumer debts or attempting to collect

consumer debts for the debt collector." *Id.* § 392.304(a)(2).

Here, Plaintiff conclusorily asserts that Ocwen "use[d] a deceptive means to collect a debt"

---

[16]  Ocwen contends that Plaintiff's statement that the mortgage was "not in default" at the time it commenced the foreclosure proceedings negates any claim that it was a debt collector under the TDCPA. (doc. 6 at 10.) This argument relates to the definition of a "third party debt collector" under the Federal Debt Collection Practices Act. *See* 15 U.S.C. § 1692a(6); Tex. Fin. Code Ann. § 392.001(7). As noted, courts have held that actions by a mortgagee or mortgage servicer in connection to a foreclosure may violate the TDCPA. *See Sanghera*, 2012 WL 555155, at *7.

[17]  Plaintiff incorrectly lists this section as "§ 391.304(a)." (*See* doc. 1-1 at 12.) Section 391.001 is the definitions section of the Act and § 391.002 concerns matters unrelated to Plaintiff's claims. *See* Tex. Fin. Code Ann. §§ 391.001–2.

in violation of the TDCPA.  (doc. 1-1 at 12.)  He lists § 392.304(a)(2) but fails to state the specific actions by part of Ocwen that violated this provision.  To the extent he refers to Ocwen's alleged failure to modify his mortgage, complete the short sale, release the insurance funds or apply them to the debt, or provide him with the requisite foreclosure notices, this conduct is entirely unrelated to any failure to maintain all the business names previously used by or on behalf of the debt collector.  *See* Tex. Fin. Code Ann. §§ 392.304(a)(2).  Plaintiff's allegations fail to meet the pleading standards under *Iqbal*, and his TDCPA claim under § 392.304(2) should be dismissed.  *See Iqbal*, 556 U.S.  at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief.) (citing *Twombly*, 550 U.S. at 555).

> b.      Subsection 392.304(a)(10)

Subsection 392.304(a)(10) prohibits the practice of "using, distributing, or selling a written communication that simulates or is represented falsely to be a document authorized, issued, or approved by a court, an official, a governmental agency, or any other governmental authority or that creates a false impression about the communication's source, authorization, or approval."  Tex. Fin. Code Ann. § 392.304(a)(10).

As with Plaintiff's previous claim, this claim also fails because Ocwen's purported actions did not involve misrepresenting that a document was authorized, issued, or approved by a governmental entity.  *See id.*  Accordingly, Plaintiff's claim under § 392.304(a)(10) should also be dismissed.  *See Iqbal*, 556 U.S.  at 678.

> c.      Subsection 392.304(a)(8)[18]

In debt collection, or in obtaining information concerning a consumer, § 392.304(a)(8)

---

[18]  Although Plaintiff does not expressly list this subsection, he invokes it by reciting the statutory language.  (*See* doc. 1-1 at 12.)

prohibits a debt collector from "misrepresenting the character, extent, or amount of a consumer debt." Tex. Fin. Code Ann. § 392.304(a) (8) (West 2004).

Here, Plaintiff conclusorily asserts that Ocwen "[m]isrepresent[ed] the character, extent, or amount of a consumer debt." (doc. 1-1 at 12.) The allegations in his complaint fail to show Ocwen's purported actions violated this provision. Although he complains that Ocwen demanded "nearly $70,000 in cash" in addition to the $33,000 in insurance proceeds to stop the foreclosure, which he claims "far exceed[ed] the amount due on the note," he does state the amount of the note. (*See* doc. 1-1 at 9.) He also fails to assert facts showing Ocwen misrepresented the character or extent of the mortgage. (*See id.*) Without more, his allegations fail to "nudge[] [his] claim across the line from conceivable to plausible." *See Twombly*, 550 U.S. at 570. Accordingly, this claim should also be dismissed for failure to state a claim. *See id.*

## 2.    *Unreasonable Collection Efforts*

Ocwen contends that Plaintiff fails to state a claim for unreasonable collection efforts because he does not assert any facts showing that "Ocwen engaged in any sort of pattern of abusive and harassing behavior" in efforts to collect on the mortgage. (doc. 6 at 10–11.)

Although the intentional tort of "unreasonable collection efforts" does not have a precise definition, courts in Texas generally define it as "efforts that amount to a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." *Sanghera*, 2012 WL 555155, at *6 (citing *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App.—Dallas 2008, no pet.)).[19]

---

[19] The Fifth Circuit has noted that "the Texas Supreme Court has never delineated a standard for this tort," and has upheld the standard set out in *Jones*. *See De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 Fed. App'x 200, 204–05 (5th Cir. 2012).

Here, Plaintiff claims that Ocwen's conduct was "unreasonable and violate[d] the ordinary standard of care required of mortgage loan servicing companies." (doc. 1-1 at 12.) He was damaged as a result and seeks to recover, among other things, "damages for loss of credit," mental anguish, and "emotional distress." (*Id.* at 13.) Plaintiff again fails to specify Ocwen's conduct. (*See id.*) Even if his claim were premised on his allegations that Ocwen failed to modify the mortgage, execute a short sale, apply the insurance proceeds to the debt, or provide him with the requisite foreclosure notices, he fails to state a plausible claim for relief. First, courts have found that similar conduct did not constitute unreasonable collection efforts. *See, e.g.*, *Sanghera*, 2012 WL 555155, at *7 (holding that the defendant's foreclosure after having promised not to foreclose and accepted partial payments under a modification plan did "not, as a matter of law, rise to a level of 'efforts that amount to a course of harassment that was willful, wanton, [or] malicious'") (citation omitted); *Richardson v. Wells Fargo Bank, N.A.*, 873 F. Supp. 2d 800, 814–15 (N.D. Tex. 2012) (holding that the defendant's alleged conduct of failing to give the plaintiff the opportunity to reinstate or cure the default and intentionally misleading and delaying him to the point of foreclosure did not constitute unreasonable collection efforts). Further, his allegations do not show the requisite intent, since he fails to even allege that Ocwen *intended* to inflict him mental anguish or bodily harm. *See Jones*, 252 S.W.3d at 868. Accordingly, his claim for unreasonable collection efforts should be dismissed for failure to state a claim.[20]

---

[20] Courts have also held that "if money is, in fact, owed to the lender, an unreasonable-collection-efforts claim cannot survive even if the plaintiff disputes the amount of that debt." *DeFranceschi v. Wells Fargo Bank, N.A.*, 837 F. Supp. 2d 616, 624–25 (N.D. Tex. 2011); *see also Miranda v. Wells Fargo Bank, N.A.*, No. 3:13-CV-2217-L, 2013 WL 3230672, at *2 (N.D. Tex. June 27, 2013) (holding that the plaintiff's allegations that the lender foreclosed on the property without giving him "a chance to cure the default and reinstate his mortgage," without more, did not show that the lender's actions constituted unreasonable collection efforts given the plaintiff's admitted default). Notably, Plaintiff concedes that he fell behind on his mortgage payments in 2012 and does not allege or assert any facts showing that he became current. (*See* doc. 1-1 at 8–15.) His claim therefore fails for this additional reason.

## D.    Other Claims

### 1.    Common-Law Fraud

Liberally construed, Plaintiff's complaint asserts common-law fraud claims in connection

to Ocwen's alleged failure to modify the loan and execute a short sale, as well as Ocwen's alleged

misappropriation of the $33,000 in insurance funds.  (*See* doc. 1-1 at 10–11, 15.)

In Texas, the elements of common-law fraud are: (1) the defendant made a representation to

the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the

defendant made the representation, the defendant knew it was false or made the representation

recklessly and without knowledge of its truth; (5) the defendant made the representation with the

intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the

representation caused the plaintiff injury.  *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd.*

*v. Potter*, 607 F.3d 1029, 1032–33 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pacific Mut. Life*

*Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).

A dismissal for failure to plead fraud with particularity pursuant to Rule 9(b) is treated the

same as a Rule 12(b)(6) dismissal for failure to state a claim.  *McCall v. Genentech, Inc.*, No. 3:10-

CV-1747-B, 2011 WL 2312280, at *3 (N.D. Tex. June 9, 2011) (citing *Lovelace v. Software*

*Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)).  Rule 9(b) contains a heightened pleading

standard and requires a plaintiff to plead the circumstances constituting fraud with particularity.  *See*

Fed. R. Civ. P. 9(b); *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir.

2010).  "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the

statements contended to be fraudulent, identify the speaker, state when and where the statements

were made, and explain why the statements were fraudulent."  *Williams v. WMX Techs.*, 112 F.3d

175, 177 (5th Cir. 1997).  "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out" with respect to a fraud claim.  *Benchmark Electronics*, 343 F.3d at 724.

> a.      Promises to Modify and Execute a Short Sale

Ocwen construes the complaint as asserting a claim for common-law fraud based on Plaintiff's allegation that it failed to delay the foreclosure while his modification application was pending.  (doc. 6 at 8.)  It argues that the claim is barred by the statute of frauds.  (*Id.*)

Plaintiff alleges that he fell behind on his mortgage payments in 2012 and contacted Ocwen to modify his loan and execute a short sale.  (doc. 1-1 at 8–9.)  Ocwen allegedly assured him that it would approve his application and agreed to complete the short sale.  (*Id.* at 9.)  He claims Ocwen breached its promises and "knowingly engaged in a protracted attempt to defraud" him by delaying the loan modification process, "den[ying] the existence of documents . . . in its possession," and ultimately foreclosing on the Property despite having promised not to do so.  (*Id.* at 10.)

As discussed, material modifications to a loan agreement exceeding $50,000 must be in writing to be enforceable.  *See Enis*, 2012 WL 4741073, at *3; *see also* Tex. Bus. & Com. Code Ann. § 26.02(b).  To the extent Plaintiff asserts a fraud claim based on his allegation that Ocwen breached its oral promises to modify the loan and conduct a short sale, the claim is barred by the statute of frauds because, as previously noted, he does not state that the amount owed on the note was less than $50,000 or that Ocwen's alleged promises were reduced to writing.  *See Salazar v. BAC Home Loans Servicing, LP*, No. 3:11-CV-1309-L, 2012 WL 995296, at *3 (N.D. Tex. Mar. 23, 2012) (holding that the plaintiff's fraud claim, which was based on the defendant's alleged failure to modify her loan, was barred by the statute of frauds; explaining that "[w]hen a plaintiff in [her] claim asserting fraud, attempts to rely upon an allegedly fraudulent oral promise to enforce [a]

contract, the Statute of Frauds is a defense to [her] fraud claim" ) (citing to *Leach v. Conoco, Inc.*, 892 S.W.2d 954, 960 (Tex. App.—Houston [1st Dist.] 1995, writ dism'd w.o.j.)).  Accordingly, this aspect of Plaintiff's fraud claim should be dismissed under Rule 12(b)(6) for failure to state a claim.

b.   <u>Misappropriation of Insurance Proceeds</u>

Plaintiff essentially asserts that in the fall of 2012, Ocwen defrauded him of $33,000 by refusing to release the insurance proceeds or apply them to the balance due on the note.  (doc. 1-1 at 9, 11.)  Ocwen does not address this aspect of Plaintiff's fraud claim.  (*See* doc. 6.)

Although Plaintiff attempts to state the who, what, and when with respect to his fraud claim, he does not explain *how* or *why* Ocwen's alleged refusal to part with the insurance funds was fraudulent.  *See Williams*, 112 F.3d at 177.  He does not allege any facts supporting an inference that Ocwen intended him to act or rely on any misrepresentations in connection to any insurance claim. *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) ("[S]imple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b) . . . The plaintiffs must set forth *specific facts* supporting an inference of fraud[,] . . . such as identify[ing] circumstances that indicate conscious behavior on the part of the defendant.") (citations omitted) (emphasis in *Dorsey*).  Any common-law fraud claim based on Ocwen's purported misappropriation of the $33,000 insurance proceeds, should be *sua sponte* dismissed[21] under Rule 9(b) for failure to meet its heightened

---

[21] The Court may *sua sponte* dismiss this aspect of Plaintiff's fraud claim on its own motion for failure to state a claim as long Plaintiff has notice of the intention to dismiss and an opportunity respond.  *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006) (citing *Shawnee Int'l., N.V. v. Hondo Drilling Co.*, 742 F.2d 234, 236 (5th Cir. 1984)).  The fourteen-day time frame for filing objections to a recommended dismissal provides Plaintiff with notice and an opportunity to respond.  *See Ratcliff v. Coker*, No. 9:08cv127, 2008 WL 4500321, at *3 n. 1 (E.D. Tex. Sept. 26, 2008).

pleading requirements.[22]

### 2.    *Wrongful Foreclosure*

Ocwen also moves to dismiss Plaintiff's wrongful foreclosure claim—to the extent he asserts

such a claim—arguing that the claim "cannot succeed" because no foreclosure sale has yet occurred,

and therefore no "irregularity in the [foreclosure] sale" can be shown.  (doc. 6 at 11.)

The purpose of a wrongful foreclosure action is to protect mortgagors against mistake, fraud,

and unfairness in foreclosure proceedings.  *See In re Keener*, 268 B.R. 912, 921 (Bankr. N.D. Tex.

2001) (citing 30 Tex. Jur. 3d Deeds of Trusts and Mortgages § 177 (1998)).  In Texas, "a debtor may

recover for wrongful foreclosure when an irregularity in the foreclosure sale contributes to recovery

of an inadequate price of the property."  *Matthews v. JPMorgan Chase Bank, N.A.*, No. 3:11-CV-

00972-M, 2011 WL 3347920, at *2 (N.D. Tex. Aug.1, 2011).  The plaintiff must prove: "(1) a defect

in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection

between the defect and the grossly inadequate selling price."  *Hurd*, 880 F. Supp. 2d at 766 (citing

*Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.)).

A procedural defect may occur when the foreclosing party either "fails to comply with statutory or

contractual terms," or "complies with such terms, yet takes affirmative action that detrimentally

---

[22] Plaintiff contends that Ocwen's "conduct was knowing, with malice, fraudulent, and criminal," and he cites to §§ 32.46–47 of the Texas Penal Code.  (doc. 1-1 at 15.)  Section 32.46(a) makes it a crime to secure the execution of a document by deception.  *See* Tex. Penal Code Ann. § 32.46(a) (West 2001).  "Whether a defendant has committed acts amounting to a felony under § 32.46 may affect the availability of exemplary damages in a civil case."  *Brimer v. Chase Bank, USA, N.A.*, No. 7:10-CV-7-O, 2011 WL 4715173, at *8 (N.D. Tex. Sept. 22, 2011).  To recover such damages, the "plaintiff must first establish that he is entitled to exemplary damages, which requires clear and convincing evidence that the plaintiff suffered harm as a result of fraud, malice, or gross negligence."  *Id.* (citing Tex. Civ. Prac. & Rem. Code § 41.003(a)).  Here, Plaintiff has failed to meet this burden given his failure to state a viable fraud claim. Under § 32.47, it is a crime to destroy, remove, conceal, alter, substitute, or otherwise impair the verity, legibility, or availability of a writing "with the intent to defraud or harm another."  Tex. Penal Code Ann. § 32.47(a).  Any claim under this section "fails as a matter of law because the Texas Penal Code does not create a private right of action."  *See Kiggundu v. Mortgage Elec. Registration Sys., Inc.*, No. CIV.A. 4:11-1068, 2011 WL 2606359, at *6 n. 79 (S.D. Tex. June 30, 2011), *aff'd*, 469 F. App'x 330 (5th Cir. 2012) (citations omitted).

affects the fairness of the foreclosure proceedings." *Matthews*, 2011 WL 3347920, at \*2.  Recovery

is not available merely by showing a defect in the foreclosure process; "it is also necessary that there

be [a] [grossly] inadequate selling price resulting from the defect."  *Biggers v. BAC Home Loans*

*Servicing, LP*, 767 F. Supp.2d 725, 729 (N.D. Tex. 2011) (Fitzwater, C.J.).

      Here, Plaintiff complains that Ocwen is "attempting to wrongfully foreclose on the Property"

because Ocwen initiated the proceedings even though the note was "not in default." (doc. 1-1 at 10.)

He seeks to enjoin the foreclosure and recover damages for his "loss of title." (*Id.* at 14–16.)  Apart

from his allegation that Ocwen is attempting to "wrongfully foreclose" on the Property, Plaintiff's

complaint does not state any facts supporting the elements of a wrongful foreclosure action.  Given

his request for injunctive relief to prevent Ocwen from foreclosing on the Property, he cannot allege

that the Property has been sold for a grossly inadequate price.  Moreover, his statement that he

remains in possession of the Property (doc. 1-1 at 8) is fatal to any wrongful foreclosure action, since

recovery for wrongful foreclosure "is based on the mortgagor's [lost] possession."  *See Petersen v.*

*Black*, 980 S.W.2d 818, 823 (Tex. App.—San Antonio 1998, no pet.) (holding that "[w]here the

mortgagor's possession is undisturbed, he has suffered no compensable damage"); *see also Medrano*

*v. BAC Home Loans Servicing, LP.*, No. 3:10–CV–02565–M (BF), 2012 WL 4174890, \*3 (N.D.

Tex. Aug.10, 2012) ("An attempted wrongful foreclosure is not an action recognized under Texas

law.").  Accordingly, any wrongful foreclosure claim should be dismissed for failure to state a claim.

**E.**     *Sua Sponte* **Dismissal**

      Although not explicitly listed as claims, the allegations in Plaintiff's complaint may be

liberally construed as asserting claims for violations of the Texas Constitution, breach of the duty

of good faith and fair dealing, and suit to quiet title.  (*See* doc. 1-1 at 10–11, 14.)  He also requests

injunctive relief to prevent Ocwen from foreclosing and selling the Property.  (*Id.* at 15–17.)  The Court may *sua sponte* dismiss the claims on its own motion so long as Plaintiff receives notice and the opportunity to respond.  *See Carroll*, 470 F.3d at 1177; *Ratcliff*, 2008 WL 4500321, at *3 n. 1

### 1.      *Breach of the Duty of Good Faith and Fair Dealing*

Plaintiff's allegation that Ocwen's conduct was "unconscionable" and constituted a "wanton disregard [of] the requirement of good faith and fair dealing" appears to state a claim for breach of the duty of good faith and fair dealing.  (*See* doc. 1-1 at 14.)

In Texas, "[a] claim for breach of duty of good faith and fair dealing is a tort action that arises from an underlying contract."  *Souto v. Bank of Am., N.A.*, No. CIV.A. H-11-3556, 2012 WL 3638024, at *4 (S.D. Tex. Aug. 22, 2012) (citing *Cole v. Hall*, 864 S.W.2d 563, 568 (Tex. App.—Dallas 1993, writ dism'd w.o .j.)). The duty of good faith and fair dealing, however, only "applies in limited circumstances involving a 'special relationship' between the parties, such as between insurers and insureds, principal and agent, joint venturers, and partners."[23]  *Lowe v. ViewPoint Bank*, No. 3:12-CV-1725-G BH, 2013 WL 5273122, at *9 (N.D. Tex. Sept. 18, 2013) (citing *Hall v. Resolution Trust Corp.*, 958 F.2d 75, 79 (5th Cir. 1992)).  Courts have held that no special relationship giving rise to a duty of good faith and fair dealing exists between a mortgage servicer and a mortgagor.  *See Souto*, 2012 WL 3638024, at *4; *UMLIC VP LLC v. T & M Sales & Envt'l. Services, Inc.*, 176 S.W.3d 595, 612 (Tex. App.—Corpus Christi 2005, pet. denied). Accordingly, absent contractual provisions expressly creating a duty of good faith and fair dealing between a mortgage servicer and a mortgagor, a court will not imply such a duty.  *Richardson v.*

---

[23]   This type of "special relationship" is often "characterized by shared trust or an imbalance in bargaining power." *Motten v. Chase Home Fin.*, 831 F. Supp. 2d 988, 1006 (S.D. Tex. 2011) (citing *FDIC v. Coleman*, 795 S.W.2d 706, 709 (Tex.1 990)).

*Wells Fargo Bank, N.A.*, 873 F. Supp. 2d 800, 812 (N.D. Tex. 2012).

Here, Plaintiff does not allege or state any facts showing there is a special relationship between him and Ocwen, and he fails to identify any contractual provision creating a duty of good faith and fair dealing between them. (*See* doc. 1-1 at 5–19.) Any claim for breach of the duty of good faith and fair dealing fails and should be *sua sponte* dismissed for failure to state a claim.

### 2.      *Violations of the Texas Constitution*

Plaintiff appears to allege that Ocwen "violated the Texas Constitution" by initiating the foreclosure proceedings even though the note was not in default. (doc. 1-1 at 10.)

While Plaintiff cites to the Texas Constitution in passing, he does not even specify a provision that Ocwen allegedly violated. (*See id.*) Moreover, his concession that he fell behind on his mortgage payments negates his statement that the note was not in default when Ocwen scheduled the Property for foreclosure. (*See id.* at 8.) Accordingly, to the extent he asserts a claim under the Texas Constitution, the claim fails and should be *sua sponte* dismissed.

### 3.      *Suit to Quiet Title*

Liberally construed, Plaintiff's request for "damages for cloud on [his] home" asserts a quiet title claim. (doc. 1-1 at 14.)

A suit to quiet title, also known as a claim to remove cloud from title, "relies on the invalidity of the defendant's claim to property." *Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32, 42 (Tex. App.—Houston [1st Dist.] 2011, no pet.). This suit "enable[s] the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right." *Bell v. Ott*, 606 S.W.2d 942, 952 (Tex. Civ. App.—Waco 1980, writ ref'd n.r.e.) (citation and internal quotation marks omitted). To prevail, a plaintiff must show that: (1) he has an interest in

a specific property; (2) his title to the property is affected by a claim by the defendant; and (3) the claim, although facially valid, is invalid or unenforceable. *Hurd*, 880 F. Supp. 2d at 766 (citing *U.S. Nat'l Bank Ass'n v. Johnson*, No. 01-10-00837-CV, 2011 WL 6938507, at *3 (Tex. App.—Houston [1st Dist.] Dec. 30, 2011, no pet.) (mem. op.)). The plaintiff "must allege right, title, or ownership in himself or herself with sufficient certainty to enable the court to see he or she has a right of ownership that will warrant judicial interference." *Id.* at 766–67 (citing *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App.—Beaumont 2000, pet. denied)). Notably, the plaintiff must prove and recover on the strength of his own title, not on the weakness of his adversary's title. *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App.—Corpus Christi 2001, no pet.).

Plaintiff refers to a quiet title claim by name but fails to allege sufficient facts to state a plausible claim for relief. The sole allegation in the complaint relating to a quiet title action is his conclusory statement that he "is the rightful owner of the Property." (*See* doc. 1-1 at 13.) Notably, he admits he fell behind on his mortgage payments and does not allege that Ocwen's claim to the Property is invalid. He also does not allege or state facts showing that his purported title is superior to Ocwen's. Accordingly, any quiet title claim should be *sua sponte* dismissed because it is factually unsupported.

### 4.    *Injunctive Relief*

Plaintiff requests a TRO and a temporary and permanent injunction to restrain Ocwen from foreclosing on and selling the Property. (doc. 1-1 at 15–17.)

"To obtain injunctive relief, [a] plaintiff is required to plead and prove, inter alia, 'a substantial likelihood of success on the merits.'" *Jackson v. Fed. Home Loan Mortg. Corp.*, No. 4:11-CV-507-A, 2011 WL 3874860, at *3 (N.D. Tex. Sept. 1, 2011) (citing *DSC Commc'ns Corp.*

*v. DGI Techs., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996)).   Because Plaintiff's substantive claims are subject to dismissal on the merits, he cannot establish any likelihood of success on the merits.   *See Jackson*, 2011 WL 3874860, at *3.   Although Ocwen does not address Plaintiff's requests for injunctive relief, the Court should *sua sponte* dismiss them given his failure to state a viable claim for relief.   *See Carroll*, 470 F.3d at 1177; *Ratcliff*, 2008 WL 4500321, at *3 n. 1.

## F.   Declaratory Judgment

Lastly, Ocwen moves to dismiss Plaintiff's request for declaratory judgment.   (doc. 6 at 12.)

Plaintiff seeks numerous declarations under the Texas Declaratory Judgments Act, codified in §§ 37.001–37.011 of the Texas Civil Practice & Remedies Code.[24]   "The Texas act is a procedural, rather than substantive, provision, and would generally not apply to a removed action" such as this one.   *See Brock v. Fed. Nat'l Mortg. Ass'n*, No. 4:11-CV-211-A, 2012 WL 620550, at *5 (N.D. Tex. Feb. 24, 2012).   In light of removal, the action may be construed as one brought under the federal Declaratory Judgment Act (DJA), 28 U.S.C. §§ 2201, 2202.   *See Bell v. Bank of Am. Home Loan Servicing LP*, No. 4:11-CV-02085, 2012 WL 568755, at *8 (S.D. Tex. Feb. 21, 2012) ("When a declaratory judgment action is filed in state court and is subsequently removed to federal court, it is converted to one brought under the federal [DJA].").

The DJA provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."   28 U.S.C.A. § 2201 (West 2010).   The Act "does not create a substantive cause of action,"

---

[24]   These declarations are: (1) Ocwen cannot foreclose because it has "unclean hands" given its conduct in relation to the foreclosure; (2) Plaintiff did not materially breach the terms of the note and deed of trust; (3) Ocwen lacks standing to foreclose on the Property; and (4) Ocwen waived its right to accelerate the note and foreclose on the Property by breaching the duty of good faith and fair dealing.   (doc. 1-1 at 11, 13–14.)

however, and "is merely a vehicle that allows a party to obtain an early adjudication of an actual

controversy arising under other substantive law." *Metropcs Wireless, Inc. v. Virgin Mobile USA,*

*L.P.*, No. 3:03-CV-1658-D, 2009 WL 3075205, at *19 (N.D. Tex. Sept. 25, 2009) (Fitzwater, C.J.)

(citations and internal quotation marks omitted).  It is an authorization, not a command, and gives

federal courts broad, but "not unfettered," discretion to grant or refuse declaratory judgment.  *Id.*

      Here, given Plaintiff's failure to state a viable claim for relief against Ocwen or show that

a genuine controversy exists between the parties, his declaratory judgment action should be

dismissed.  *See Bell*, 2012 WL 568755, at *8 (denying the plaintiff's request for declaratory

judgment where she had alleged no facts leading to a conclusion that a present controversy existed

between her and the defendant); *Turner v. AmericaHomeKey, Inc.*, 2011 WL 3606688, at *5–6 (N.D.

Tex. Aug. 16, 2011) (Fitzwater, C.J.), *aff'd*, 2013 WL 657772 (5th Cir. Feb. 22, 2013) (declining

to entertain the plaintiff's request for declaratory judgment where he had not pleaded a plausible

substantive claim).

## IV.  OPPORTUNITY TO AMEND

      Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro*

*se* plaintiffs several opportunities to state a claim upon which relief can be granted.  *See Scott v.*

*Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*,

No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001) (Fitzwater, C.J.).  Courts

therefore typically allow *pro se* plaintiffs to amend their complaints when the action is to be

dismissed pursuant to a court order.  *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,

No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600,

at *2.  A *pro se* plaintiff may also obtain leave to amend his complaint in response to a

recommended dismissal.  *See Swanson v. Aegis Commc'ns Grp., Inc.*, No. 3:09-CV-0041-D, 2010 WL 26459, at * 1 (N.D. Tex. Jan. 5, 2010); *Scott*, 2008 WL 398314, at * 1.  Nonetheless, courts may appropriately dismiss an action with prejudice without giving an opportunity to amend when the plaintiff fails to respond to a motion to dismiss after being specifically invited to do so by the court, the defendant has specifically noted the failure to respond, and the plaintiff has had ample opportunity to amend the complaint.  *Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995). Dismissal with prejudice is also appropriate if a court finds that the plaintiff has alleged his or her best case.  *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Here, Plaintiff has not amended his complaint since filing this action.  He failed to respond to Ocwen's motion to dismiss despite being invited to do so by the Court.  (*See* doc. 8.) Nevertheless, because it does not appear that Plaintiff has stated his best case to the Court with respect to any of his claims, he should be accorded an opportunity to amend his complaint to sufficiently state a claim for relief.

## V.  RECOMMENDATION

Plaintiff's motion to remand should be **DENIED.** If Plaintiff does not file an amended complaint that states a claim for relief within the 14 days allowed for objections to this recommendation, or a deadline otherwise set by the Court, Ocwen's motion to dismiss should be **GRANTED,** and all of Plaintiff's claims against it should be dismissed with prejudice.  If Plaintiff timely files an amended complaint, however, Ocwen's motion to dismiss should be **DENIED as moot,** and the action should be allowed to proceed on the amended complaint.

**SO RECOMMENDED** on this 5th day of November, 2013.

_(signature)_

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. _See_ 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. _See Douglass v. United Servs. Automobile Ass'n_, 79 F.3d 1415, 1417 (5th Cir. 1996).

_(signature)_

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE