**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| JAY LUCAS, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **Civil Action No. 3:13-CV-1057-G** |
| | § | |
| OCWEN HOME LOAN SERVICING, | § | |
| et al., | § | |
| | § | |
| **Defendants.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to Special Order No. 3-251, this case was automatically referred for pretrial management. Before the Court is *Defendant's Motion to Dismiss Plaintiff's First Amended Petition,* filed March 6, 2014 (doc. 36). Based on the relevant filings and applicable law, the motion to dismiss should be **GRANTED in part** and **DENIED in part.**

## I. BACKGROUND

This case involves the attempted foreclosure of real property located at 2575 Gibbs Williams Road, Dallas, Texas 75233 (the Property). (doc. 1-1 at 6.)[1] On February 28, 2013, Jay Lucas (Plaintiff) filed this *pro se* suit against Federal National Mortgage Association (Fannie Mae), Mortgage Electronic Registration Systems (MERS), Saxon Mortgage (Saxon), Reconstruct, and Ocwen Loan Servicing, LLC (Ocwen)[2] in the Dallas County Court at Law No. 1. (*Id.* at 5.) On March 1, 2013, the state court issued a temporary restraining order to restrain Ocwen from executing

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

[2] Plaintiff incorrectly names Ocwen as "Ocwen Home Loan Servicing" in his first amended complaint. (doc. 32 at 1-2.)

a foreclosure sale of the Property. (*Id.* at 43-44.) On March 12, 2013, Ocwen removed the action to federal court asserting diversity jurisdiction under 28 U.S.C. § 1332. (doc. 1 at 3.) On December 16, 2013, Fannie Mae, MERS, Saxon, and Reconstruct were dismissed with prejudice from the case. (docs. 27, 29.) On February 5, 2014, Plaintiff filed a first amended complaint. (doc. 32.)

Plaintiff claims that he is the Property's "rightful owner" and that he has maintained possession of it as of the date he filed the amended complaint. (*Id.* at 4.) He contends that Ocwen has no valid security interest in the Property and no enforceable right to it. (*Id.*) He maintains that he never borrowed money from Ocwen, he never entered into any agreement or contract with Ocwen regarding the Property, and he only borrowed "purchase money from Southwest Funding." (*Id.* at 10.) On March 5, 2013, Ocwen "placed the house for auction" without giving him notice of acceleration, a demand for the balance due on the loan, and the requisite foreclosure notices. (*Id.* at 4, 6.) Plaintiff contends that Ocwen has no standing to foreclose, and "[a]s a result of [its] wanton disregard [of] the requirement of good faith and fair dealing," [Ocwen] waived [its] rights to accelerate the note and foreclose on the Property. (*Id.* at 14.)

Ocwen allegedly refused to respond to or provide documents for "no less than 3 written R.E.S.P.A. requests in 2012 which qualified as Q.W.R.s."[3] (*Id.*) Plaintiff complains that Ocwen's refusal to respond to the requests has "effectively prevented [him] from having the evidence necessary to present a large portion of his case." (*Id.*) He also claims that Ocwen fraudulently withheld $33,000 in insurance proceeds for repairs to the Property after it was damaged by fire in the fall of 2012, and it refused to release the funds or apply them to the balance due on the mortgage.

---

[3]He contends that the requests qualified as Q.W.R.s, or qualified written requests, because they contained (a) information identifying the alleged loan; (b) information identifying the Property; (c) information identifying the alleged borrower; and (d) a request for documents supporting Ocwen's claim. (doc. 32 at 4.)

(*Id.* at 8.)  Ocwen allegedly forged his signature and placed the insurance check for the $33,000 in its bank account.  (*Id.*)  It also "acted with malice to deprive [him]" of the Property by breaking into the Property, stealing his personal property, and changing the locks on or about November 2012. (*Id.* at 6-7.)

Plaintiff expressly lists claims for "violations of C.P.F.D. Rules", wrongful foreclosure, breach of contract, violations of the Texas Debt Collection Practices Act (TDCPA), the common law tort of unreasonable collection efforts, and quiet title.  (*Id.* at 6-15.)  Liberally construed, the amended complaint also asserts claims for fraud, violations of the Real Estate Settlement Procedures Act (RESPA), violations of the Texas Constitution, violations of the Texas Property Code, violation of the duty of good faith and fair dealing, conversion, forgery, and trespass.  (*Id.* at 4-13.)  He seeks actual, economic, and exemplary damages, attorney's fees, declaratory judgment, and injunctive relief to restrain Ocwen from evicting him from the Property.  (*Id.* at 15, 17.)

Ocwen moved to dismiss Plaintiff's amended complaint on March 6, 2014.  (doc. 36.) With a timely-filed response (doc. 41) and a timely-filed reply (doc. 43), the motion is now ripe for recommendation.

## II.  MOTION TO DISMISS

Ocwen moves to dismiss Plaintiff's claims for breach of contract, "violations of C.P.F.D. Rules," violations of the TDCPA, unreasonable collections efforts, suit to quiet title, and wrongful foreclosure as well as his request for declaratory judgment pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  (docs. 36, 37.)

### A.    **Rule 12(b)(6) Standard**

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be

granted. Fed. R. Civ. P. 12(b)(6). Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981). Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quotation marks omitted).

Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the miscon-duct alleged. The plausibility standard is not akin to a "probability requirement," but

it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted).  When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

## B.    <u>Breach of Contract Claim</u>

Ocwen first moves to dismiss Plaintiff's breach of contract claim.  (doc. 37 at 3-4.)  It argues that Plaintiff attempts to support his material breach claim by alleging Ocwen failed to provide him with documents required under RESPA, but he "wholly fails to identify the existence of a valid contract between him and Ocwen." (*Id*. at 4.)

The essential elements of a breach of contract claim in Texas are:  "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 759 (N.D. Tex. 2012) (citing *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009)).

Here, Plaintiff alleges that Ocwen "breached the deed of trust deed restrictions, covenants and collateral and contract agent." (doc. 32 at 7.)  He also alleges a "material breach" by Ocwen in refusing to provide him with documents as required under RESPA. (*Id*. at 11.)  He alleges elsewhere in the amended complaint that his RESPA requests qualify as QWRs. (*Id*. at 4.)  The amended complaint fails to identify, however, the existence of a valid contract between Plaintiff and Ocwen that incorporates RESPA provisions or requires it to comply with the terms of RESPA.  To the extent Plaintiff contends that the deed of trust incorporates RESPA provisions, the amended complaint fails

to identify any provisions of the deed of trust that incorporate provisions of RESPA requiring Ocwen

to respond to or comply with the alleged QWR requests.[4]  Accordingly, Ocwen's motion to dismiss

Plaintiff's breach of contract  claim should be granted.

## C.      Violations of C.P.F.D. Rules

Ocwen seeks dismissal of Plaintiff's claim for "multiple violations of C.P.F.D. Rules"

because there is no legal cause of action for violations of "C.P.F.D."  (doc. 37 at 4.)  To the extent

Plaintiff seeks relief under regulations created by the Consumer Financial Protection Bureau (CFPD),

Ocwen also seeks dismissal on the basis that Plaintiff has failed to sufficiently plead a claim because

the rules he relies on were not in effect at the time of the alleged violations.  (*Id.*)

Plaintiff alleges that Ocwen is in violation of certain requirements of the new "C.P.F.D.

rules", specifically: "[(a)] Ocwen...did not send notice to Plaintiff within 15 days of the missed

payment[;] [(b)] Ocwen...failed to provide written notice of 'loss mitigation options[;]' and [(c)]

Ocwen...failed to notify Plaintiff of counseling options."  (doc. 32 at 6-7.)  He contends that no

action has been taken by Ocwen since it asserted that there had not been a foreclosure on the

Property.  (*Id.* at 6.)  Because no payments have been made on the Property in 2014, "any foreclosure

action would have to take place in 2014 and comply with the new C.P.F.D. rules."  (*Id.*)

In the Dodd-Frank Wall Street and Consumer Protection Act of 2011 (Dodd Frank Act),

Congress amended RESPA to provide greater protection for borrowers who have fallen behind on

their mortgage payments.  *See* Dodd-Frank, Pub. L. No. 111-206, 124 Stat. 1375, § 1463 (2010).

---

[4]Plaintiff attempts to clarify at least part of his breach for contract claim in his response by stating that he was operating under the belief that a contract existed between him and Ocwen in 2012 when he made regular payments on his loan.  (doc. 41 at 2.)  He contends that Ocwen breached that contract by taking the $33,000 insurance proceeds and failing to apply them to the loan or release them to him.  (*Id.*)  This claim is also subject to dismissal because his amended complaint and response fail to identify what contract he contends Ocwen breached and how Ocwen breached it by failing to apply the insurance proceeds to the loan or release them to him.

The CFPB promulgated new rules pertaining to mortgage servicing, including amendments to Regulation X, to carry-out the Dodd-Frank mandates.[5]  *See* Consumer Financial Protection Bureau, Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10696 (Feb 14, 2013) (codified in 12 C.F.R. pt. 1024).  These new rules amending Regulation X, codified in 12 C.F.R. pt. 1024, became effective as of January 10, 2014.  *Id.*  The specific "new rules" to which Plaintiff appears to be referring are codified in Section (b) of 12 C.F.R. § 1024.39, entitled, "Early  Intervention Requirements for Certain Borrowers".[6]

Liberally construing Plaintiff's allegations as a cause of action for violation of the CFPB's rules, Plaintiff still fails to state a claim.  He alleges that Ocwen scheduled a foreclosure sale of the Property on March 5, 2013, before the rules' effective date of January 10, 2014.[7]  If Plaintiff contends that Ocwen violated these new rules after the effective date, the amended complaint fails

[5]The Dodd-Frank Act transferred to the CFPB all of the "consumer financial protection functions" that were previously carried out by other regulatory agencies.  *See* Pub. L. 111-203, §§ 1061, 1098.

[6]12 C.F.R. § 1024.39 states:
   (b) Written notice.
      (1) Notice required.  Except as otherwise provided in this section, a servicer shall provide to a delinquent borrower a written notice with the information set forth in paragraph 2(b) of this section not later than the 45th day of the borrower's delinquency.  A servicer is not required to provide the written notice more than once during any 180-day period.
      (2) Content of the written notice.  The notice required by paragraph (b)(1) of this section shall include:
      (i) A statement encouraging the borrower to contact the servicer;
      (ii) The telephone number to access servicer personnel assigned pursuant to § 1024.40(a) and the servicer's mailing address;
      (iii) If applicable, a statement providing a brief description of examples of loss mitigation options that may be available from the servicer;
      (iv) If applicable, either application instructions or a statement informing the borrower how to obtain more information about loss mitigation options from the servicer; and
      (v) the Web site to access either the Bureau  list or the HUD list of homeownership counselors or counseling organizations, and the HUD toll-free telephone number to access homeownership counselors or counseling organizations.

[7]The rules relate to pre-foreclosure early intervention requirements for a servicer dealing with a delinquent borrower, so any violations of the rules would have taken place before the scheduled March 5, 2013 foreclosure.

to allege that there were any delinquencies after the ones leading to the March 5, 2013 foreclosure proceeding that would require Ocwen to engage in early intervention requirements under the new rules.  Accordingly, Ocwen's motion to dismiss this claim should be granted.

**D.**     **Subsections 392.304(a)(8) and 392.304(a)(19)[8] of the TDCPA[9]**

Ocwen also seeks dismissal of Plaintiff's claims under the TDCPA on the basis that Plaintiff's claims are nothing more than unsupported conclusory allegations.  (doc. 37 at 4-5.)

"The TDCPA prohibits debt collectors from using various forms of threatening, coercive, harassing or abusive conduct to collect debts from consumers."  *Merryman v. JP Morgan Chase & Co.*, No. 3:12-cv-2156, 2012 WL 5409735, at *4 (N.D. Tex. Oct. 12, 2012).  The Act defines a "debt collector," in relevant part, as "a person who directly or indirectly engages in debt collection."  Tex. Fin. Code Ann. § 392.001(6).  "Debt collection" is defined as "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor."  *Id.* § 392.001(5).  Courts in this district have held that debt collection can include "actions taken in foreclosing real property."  *See Sanghera v. Wells Fargo Bank, N.A.*, No. 3:10-CV-2414-B, 2012 WL 555155, at *7 (N.D. Tex. Feb. 21, 2012) (citation omitted); *Swim v. Bank of Am.*, No. 3:11-CV-1240-M, 2012 WL 170758, at * 5 (N.D. Tex. Jan. 20, 2012).  Ocwen's attempted foreclosure may therefore fall within the purview of the TDCPA.  *See Sanghera*, 2012 WL 555155, at *7.

In debt collection, or in obtaining information concerning a consumer, § 392.304(a)(8) prohibits a debt collector from "misrepresenting the character, extent, or amount of a consumer

---

[8] Although Plaintiff does not expressly list these subsections, he invokes them by reciting the statutory language. (*See* doc. 32 at 12.)

[9] Although Plaintiff refers to the "Texas Consumer Credit Code" in the title of this claim, the substance of the claim implicates only the TDCPA.  (*See* doc. 32 at 11–12.)

debt." Tex. Fin. Code Ann. § 392.304(a) (8). "Subsection 392.304(a)(19) operates effectively as a 'catch-all' provision, prohibiting a debt collector from 'using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer.'" *Sanghera*, 2012 WL 555155, at * 8 (citing *Id.* § 392.304(a)(19)); *see also Williams v. Wells Fargo Bank, N.A.*, 560 Fed. App'x 233, 239-40 (5th Cir. March 19, 2014).

Plaintiff alleges that Ocwen "use[d] a deceptive means to collect a debt" and [m]isrepresent[ed] the character, extent, or amount of a consumer debt" in violation of the TDCPA. (doc. 32 at 12.)  He contends that Ocwen misrepresented the amount of the debt by claiming it had applied the $33,000 insurance check to his loan balance and then demanding a payoff amount that did not reflect application of those funds.  (*Id.*)  This alleged false misrepresentation is an alleged misrepresentation of the amount of the debt, and Plaintiff has therefore stated a claim under § 392.304(a)(8) and § 392.304(a)(19).  Accordingly, Ocwen's motion to dismiss Plaintiff's TDCPA claim should be denied.  *See Obuekwe v. Bank of America, N.A.*, No. 4:11-cv-762-Y, 2012 WL 1388017, at *7 (N.D. Tex. April 19, 2012)(finding plaintiff stated claims for relief under §§ 392.304(a)(8), 392.304(a)(19), where she alleged a number of false or misleading assertions by defendants regarding the character, extent, and amount of the debt, including that her account was in sufficiently good standing to avoid foreclosure when it was not).

## E.     <u>Unreasonable Collection Efforts</u>

Ocwen contends that Plaintiff fails to state a claim for unreasonable collection efforts because he does not allege that "Ocwen engaged in any sort of pattern of abusive and harassing behavior" in efforts to collect on the mortgage.  (doc. 37 at 5-6.)

Although the intentional tort of "unreasonable collection efforts" does not have a precise

definition, courts in Texas generally define it as "efforts that amount to a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." *Sanghera*, 2012 WL 555155, at *6 (citing *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App.—Dallas 2008, no pet.)).[10] "Texas courts generally reserve this tort for actual collection efforts, such as telephone calls or approaching the debtor, that overstep the bounds of routine collection methods through excessive harassment." *Islamic Ass'n of Desoto, Tex., Inc. v. Mortg. Elec. Registration Sys., Inc.*, 2013 WL 169229, at *5(N.D.Tex. Jan. 16, 2013)(citing *EMC Mortg.*, 252 S.W.3d at 864-65); *see, e.g., Enis v. Bank of America*, No. 3:12-cv-0295- D, 2012 WL 4741073, at *5 (N.D.Tex. Oct. 3, 2012)(finding plaintiff stated a claim in tort for unreasonable collection efforts where defendant made "harassing" phone calls to plaintiff); *Pioneer Fin. & Thrift Corp. v. Adams*, 426 S.W.2d 317, 319 (Tex. Civ.App. 1968, writ ref'd n.r.e.)(upholding finding of unreasonable collection efforts where debt collector called plaintiff five times in one night and threatened personal violence once).

Here, Plaintiff claims that Ocwen's conduct was "unreasonable and violate[d] the ordinary standard of care required of mortgage loan servicing companies." (doc. 32 at 12.)  He claims that such "acts include, but are not limited to, depriving [him] of the use of the property by changing the locks on or about November 2012, breaking and entering the property, stealing [his] personal property and stealing the $33,000 insurance proceeds." (*Id*. at 13.)  He contends that such acts show clear intention by Ocwen to inflict mental anguish, and that he was damaged as a result and seeks to recover, among other things, "damages for loss of credit," mental anguish, and emotional distress.

---

[10]  The Fifth Circuit has noted that "the Texas Supreme Court has never delineated a standard for this tort," and has upheld the standard set out in *Jones*.  *See De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 Fed. App'x 200, 204–05 (5th Cir. 2012).

(*Id.*) Plaintiff has sufficiently alleged conduct that "overstep[s] the bounds of routine collection methods through excessive harassment." *See Islamic Ass'n of Desoto*, 2013 WL 169229, at *5. He has stated a plausible claim for unreasonable collection efforts due to the excessive and harassing nature of the allegations, so Ocwen's motion to dismiss the claim for unreasonable collection efforts should be denied.

## F.    Suit to Quiet Title

Ocwen also seeks to dismiss Plaintiff's suit to quiet title on grounds that he (i) fails to show the strength of his title, (ii) fails to allege sufficient facts to support his superior interest in the Property over Ocwen's, (iii) fails to show that Ocwen's claim is invalid and is affecting title to the Property. (doc. 37 at 6-7.)

A suit to quiet title, also known as a claim to remove cloud from title, "relies on the invalidity of the defendant's claim to property." *Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32, 42 (Tex. App.—Houston [1st Dist.] 2011, no pet.). This suit "enable[s] the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right." *Bell v. Ott*, 606 S.W.2d 942, 952 (Tex. Civ. App.—Waco 1980, writ ref'd n.r.e.) (citation and internal quotation marks omitted). To prevail, a plaintiff must show that: (1) he has an interest in a specific property; (2) his title to the property is affected by a claim by the defendant; and (3) the claim, although facially valid, is invalid or unenforceable. *Hurd*, 880 F. Supp. 2d at 766 (citing *U.S. Nat'l Bank Ass'n v. Johnson*, No. 01-10-00837-CV, 2011 WL 6938507, at *3 (Tex. App.—Houston [1st Dist.] Dec. 30, 2011, no pet.) (mem. op.)). The plaintiff "must allege right, title, or ownership in himself or herself with sufficient certainty to enable the court to see he or she has a right of ownership that will warrant judicial interference." *Id.* at 766–67 (citing *Wright v. Matthews*, 26

S.W.3d 575, 578 (Tex. App.—Beaumont 2000, pet. denied)).  Notably, the plaintiff must prove and recover on the strength of his own title, not on the weakness of his adversary's title.  *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App.—Corpus Christi 2001, no pet.).

Plaintiff contends that he has a valid interest in the Property because he is listed as the record owner, he pays the property taxes and insurance, he purchased the property and has not sold it, and he has not encumbered the Property except for the "purchase money mortgage to Southwest Funding." (doc. 32 at 14.)  He alleges that the claim by Ocwen has prevented him from selling, repairing or renting the Property, and it was damaged because he was prevented from completing certain repairs to the roof.  (*Id.*)  He also alleges that Ocwen's claim is unenforceable because there is nothing in the real property records indicating that Ocwen has an interest in the Property, and Plaintiff did not make a contract with Ocwen regarding the Property.  (*Id.* at 15.)  He has sufficiently alleged an interest in the Property for purposes of Rule 12(b)(6).  *See Metcalf v. Deusche Bank Nat. Trust Co.*, No. 3:11-cv-3014, at *7 (N.D.Tex.2012) (finding argument that plaintiffs have not pleaded any facts demonstrating the strength of their title in support of their suit to quiet title lacked force where they alleged they were the owners of the property under a deed of trust recorded in the county records); *Henry v. Chase Home Fin., LLC*, 2011 WL 6057505, at *5 n.2 (S.D.Tex. Dec. 6, 2011) (denying motion to dismiss quiet title claim on the basis of insufficient allegations of the strength of plaintiff's title because defendant failed to explain why allegations that plaintiff owned property, had been in possession of property, and had paid property taxes was insufficient to plead an interest); *Mortg. Elec. Registration Sys., Inc. v. Groves*, 2011 WL 1364070, at *4 (Tex. App. Apr. 12, 2011, pet. denied)(mem.op.)(holding plaintiff's allegation that "she owned the property by virtue of her recorded deed" was sufficient).

Plaintiff has also sufficiently alleged that his right to the Property is affected by a claim by Ocwen.  *See Tyler v. Bank of America, N.A.*, No. SA-12-cv-00909, 2013 WL 1821754, at *8 (W.D.Tex April 29, 2013)(finding that defendants' claim that they had the right to foreclose on the property pursuant to the assignment of the deed of trust constituted a "cloud" on plaintiffs' title assuming they did, in fact, own the property as alleged.); *Routh v. Bank of Am., N.A.*, No. SA-12-cv-244-XR, 2013 WL 427393, at *4 (W.D.Tex. Feb.4, 2013) (noting that the "alleged right to foreclose constitutes a 'cloud' because it affects plaintiffs' legal title to the property).

Plaintiff has failed to sufficiently allege, however, that Ocwen's claim is invalid and unenforceable.  Even assuming Ocwen has not made a contract with Plaintiff regarding the Property or recorded any document in the county records indicating that it has an interest in the Property, as the mortgage servicer of the loan,[11] it is not required to have a recorded interest in the Property or to be the holder of the deed of trust.  A mortgage servicer who is not the mortgagee may lawfully foreclose on a security interest.  Tex. Prop. Code § 51.0025; *see also Broyles v. Chase Home Finance*, No. 3:10-cv-2256-G, 2011 WL 1428904, at *3 (N.D.Tex. April 13, 2011); *Wells v. BAC Home Loans Servicing, L.P.*, No. W-10-CA-00350, 2011 WL 2163987, at *3 (W.D.Tex. April 26, 2011)("Under Texas law, a mortgage servicer can foreclose under a deed of trust, regardless of whether it is a holder.").  Accordingly, Ocwen's motion to dismiss Plaintiff's quiet title claim should be granted.

**G.**     **Declaratory Judgment**

Ocwen moves to dismiss Plaintiff's request for declaratory judgment because "Plaintiff has failed to state a viable claim against Ocwen or show that a genuine controversy exists between the

---

[11] Plaintiff contends that Ocwen is the mortgage servicer of his loan.  (doc. 32 at 5.)

parties." (doc. 37 at 7.)

Plaintiff seeks relief under the Texas Declaratory Judgments Act, codified in §§ 37.001–37.011 of the Texas Civil Practice & Remedies Code. "The Texas act is a procedural, rather than substantive, provision, and would generally not apply to a removed action" such as this one. *See Brock v. Fed. Nat'l Mortg. Ass'n*, No. 4:11-CV-211-A, 2012 WL 620550, at *5 (N.D. Tex. Feb. 24, 2012). In light of removal, the action may be construed as one brought under the federal Declaratory Judgment Act (DJA), 28 U.S.C. §§ 2201, 2202. *See Bell v. Bank of Am. Home Loan Servicing LP*, No. 4:11-CV-02085, 2012 WL 568755, at *8 (S.D. Tex. Feb. 21, 2012) ("When a declaratory judgment action is filed in state court and is subsequently removed to federal court, it is converted to one brought under the federal [DJA].").

The DJA provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C.A. § 2201 (West 2010). The Act "does not create a substantive cause of action," however, and "is merely a vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other substantive law." *Metropcs Wireless, Inc. v. Virgin Mobile USA, L.P.*, No. 3:03-CV-1658-D, 2009 WL 3075205, at *19 (N.D. Tex. Sept. 25, 2009) (Fitzwater, C.J.) (citations and internal quotation marks omitted). It is an authorization, not a command, and gives federal courts broad, but "not unfettered," discretion to grant or refuse declaratory judgment. *Id.* As discussed, Plaintiff has alleged viable claims for relief. Therefore, Defendant's motion to dismiss Plaintiff's request on the grounds that Plaintiff has failed to state a viable claim or show that a genuine controversy exists between the parties should be denied. *See Smith v. Citimortgage, Inc.*,

14

No. 4:10-cv-693, 2012 WL 629058, at *8 (E.D.Tex. Feb.27, 2012), *report and recommendation adopted*, 2012 WL 1080593 (E.D. Tex. Mar. 30, 2012)(declining to dismiss plaintiff's request for declaratory judgment because matters in the case remained in controversy).

**H.     Wrongful Foreclosure**

Ocwen last moves to dismiss Plaintiff's wrongful foreclosure claim because no foreclosure sale has yet occurred, and therefore no "irregularity in the [foreclosure] sale" can be shown.  (doc. 37 at 8-9.)

The purpose of a wrongful foreclosure action is to protect mortgagors against mistake, fraud, and unfairness in foreclosure proceedings.  *See In re Keener*, 268 B.R. 912, 921 (Bankr. N.D. Tex. 2001) (citing 30 Tex. Jur. 3d Deeds of Trusts and Mortgages § 177 (1998)).  In Texas, "a debtor may recover for wrongful foreclosure when an irregularity in the foreclosure sale contributes to recovery of an inadequate price of the property."  *Matthews v. JPMorgan Chase Bank, N.A.*, No. 3:11-CV-00972-M, 2011 WL 3347920, at *2 (N.D. Tex. Aug.1, 2011).  The plaintiff must prove: "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price."  *Hurd*, 880 F. Supp. 2d at 766 (citing *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.)). A procedural defect may occur when the foreclosing party either "fails to comply with statutory or contractual terms," or "complies with such terms, yet takes affirmative action that detrimentally affects the fairness of the foreclosure proceedings."  *Matthews*, 2011 WL 3347920, at *2.  Recovery is not available merely by showing a defect in the foreclosure process; "it is also necessary that there be [a] [grossly] inadequate selling price resulting from the defect."  *Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp.2d 725, 729 (N.D. Tex. 2011) (Fitzwater, C.J.).

Here, Plaintiff complains that Ocwen has no standing to foreclose on the Property because his "purchase money mortgage was in favor of another mortgage company." (doc. 32 at 9.)  He contends that Ocwen never recorded a security interest or assignment of a security interest in the Property, and it has never provided any documentation showing a valid interest in the Property.  (*Id.* at 10.)   Plaintiff further alleges that he never entered into any agreement or contract with Ocwen regarding the Property, he never borrowed money from Ocwen, and he only "borrowed purchase money from Southwest Funding." (*Id.*)

Plaintiff's complaint does not state any facts supporting the elements of a wrongful foreclosure action.  Given his contention that "[t]he Property has not been auctioned as of 2-5-2014" (doc. 32 at 6), he cannot allege that the Property has been sold for a grossly inadequate price. Moreover, his statement that he remains in possession of the Property (doc. 32 at 4) is fatal to any wrongful foreclosure action, since recovery for wrongful foreclosure "is based on the mortgagor's [lost] possession."  *See Petersen v. Black*, 980 S.W.2d 818, 823 (Tex. App.—San Antonio 1998, no pet.) (holding that "[w]here the mortgagor's possession is undisturbed, he has suffered no compensable damage"); *see also Medrano v. BAC Home Loans Servicing, LP.*, No. 3:10–CV–02565–M (BF), 2012 WL 4174890, *3 (N.D. Tex. Aug.10, 2012) ("An attempted wrongful foreclosure is not an action recognized under Texas law.").  Accordingly, Ocwen's motion to dismiss Plaintiff's wrongful foreclosure claim should be granted.[12]

---

[12]   Ocwen filed an appendix to its reply that contains a copy of the deed of trust.  (doc. 42.)  Also, its reply makes new arguments about Plaintiff's claims regarding the application of the insurance proceeds and fraud.  (*See* doc. 43 at 3-4.)  The purpose of filing a reply brief "is to rebut the nonmovant's response, thereby persuading the court that the movant is entitled to the relief requested by the motion."  *See Springs Industries, Inc. v. American Motorists Ins. Co.*, 137 F.R.D. 238, 239-240 (N.D. Tex. 1991) (Fitzwater, C.J.) Ocwen did not seek leave to submit additional evidence in support of its reply or introduce new arguments.  A movant is not ordinarily permitted to introduce new evidence in support of a reply or make new arguments in a reply because such actions deprive the non-movant of a meaningful opportunity to respond.  *See id.*  Because Plaintiff did not have a meaningful opportunity to respond to the new evidence

## IV.  RECOMMENDATION

Ocwen's motion to dismiss should be **GRANTED in part** and **DENIED in part,**[13] and Plaintiff's claims against it for "violations of C.P.F.D. Rules," wrongful foreclosure, breach of contract, and quiet title should be dismissed with prejudice.  Plaintiff's remaining claims for unreasonable debt collections, fraud, conversion, forgery, trespass, declaratory judgment, injunctive relief, and violations of the TDCPA, RESPA, the Texas Constitution, the Texas Property Code, and the duty of good faith and fair dealing should remain pending for trial.[14]

SO **RECOMMENDED** on this 21st day of November, 2014.



IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

or the new arguments, they are not considered.  *See Springs Industries,* 137 F.R.D. at 240 ("[W]here a movant has injected new evidentiary materials in a reply without affording the non-movant an opportunity for further response, the court [] retains the discretion to decline to consider them."); *Pennsylvania Gen. Ins. Co. v. Story*, No. 3:03-cv-0330-G, 2003 WL 21435511, at *1 (N.D.Tex. June 10, 2003)("[A] court generally will not consider arguments raised for the first time in a reply brief.")

[13]In his response, Plaintiff requests leave to amend his amended complaint to include violations of the Fair Debt Collection Practices Act. (doc. 41 at 3.) Because his request does not comply with the applicable rules of civil procedure or local rules, and only partial dismissal has been recommended, it is not construed as a motion for leave to amend.  He may seek leave to amend by filing a motion that complies with the applicable rules of civil procedure and local rules.

[14]Ocwen's motion to dismiss does not address Plaintiff's claims for fraud, conversion, forgery, trespass, injunctive relief, and violations of RESPA, the Texas Constitution, the Texas Property Code, and the duty of good faith and fair dealing, if any.  These claims therefore also remain pending for trial.

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

18